**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

RAFAEL MESSA,

                                          Plaintiff,

        v.                                                           No. 03-CV-1385
                                                                        (TJM/DRH)

LUCIEN J. LeCLAIRE, JR., Deputy Commissioner;
LESTER N. WRIGHT, Deputy Commissioner/Chief
Medical Officer, DOCS; MARC F. STERN, Regional
Medical Director, DOCS; STEVEN VanBUREN,
Regional Health Services Administration; DR.
BENDHEIN, Medical Doctor, GHCF; ALBERT
PAOLANO, Facility Health Service Director, CMCF;
HOWARD SILVERBURG; MR. NESMITH; V.
BLAESTZ, Senior Correctional Counselor; JOHN
TIORNEY, Correctional Sergeant; S. ULLRICH,
Correctional Sergeant; GERALD TILLOTSON; DAVID
MAZZELLA; CHARLES V. AUSTIN; W.R. KELLY;
C. MITCHELL; J. ERMS; M. MILLER; and M.
MRZYGLOD,
_____            Defendants.

_____

**APPEARANCES:**                              **OF COUNSEL:**

RAFAEL MESSA
No. 99-A-1402
Plaintiff Pro Se
Clinton Correctional Facility
Post Office Box 2001
Dannemora, New York 12929

HON. ANDREW M. CUOMO                    BRIDGET ERIN HOLOHAN, ESQ.
Attorney General for the                         Assistant Attorney General
    State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

Plaintiff pro se Rafael Messa ("Messa"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, nineteen DOCS employees, violated his constitutional rights under the Eighth and Fourteenth Amendments when they assaulted him, wrongly found him guilty of disciplinary charges, and provided inadequate medical treatment.  Compl. (Docket No. 1).[2]  Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Docket No. 70.  Messa opposes the motion.  Docket No. 76.  For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.


**I. Background**

The facts are presented in the light most favorable to Messa as the non-moving party.  See Ertman v. United States, 165 F. 3d 204, 206 (2d Cir. 1999).

On March 25, 2001, while incarcerated at Green Haven Correctional Facility ("Green Haven"), Messa was involved in an altercation with corrections officers in which he sustained injuries.  See Holohan Aff. (Docket No. 70), Ex. A.  Shortly thereafter, Messa was treated by Dr. Bendheim and he noted that Messa had sustained a contusion above the

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] The complaint named seven additional defendants.  Those defendants were previously dismissed.  Docket Nos. 50, 55.  The Clerk shall amend the docket of this case to reflect that the action has been terminated as to defendants Goord, Greiner, Duncan, Bundrick, Nunez, Rodas, and Martuscello.

right eye, dried blood on his lips, and complained of right ankle pain.  See Bendheim Decl. (Docket No. 70) at ¶¶ 3-8.  Dr. Bendheim ordered x-rays, placed Messa's right ankle in a splint, and transferred him to the infirmary for pain management.  Id. at ¶¶ 7, 9.  The x-rays were negative and Messa was discharged from the infirmary.  Id. at ¶¶ 8, 11.  On June 5, 2001, Messa filed a grievance regarding his medical treatment, but it was denied.  See Compl. at ¶ 50; see also Holohan Aff., Ex. B.

As a result of this altercation, Messa was issued a misbehavior report for, inter alia, assault on a staff member.  See Holohan Aff. (Docket No. 70), Ex. E at 1-10.  On April 9, 2001, Blaetz found Messa guilty of all charges and sentenced him to 180 days in the Special Housing Unit ("SHU"),[3] recommended loss of six months of good time credits, and 210 days loss of commissary, recreation, telephones, and packages.  Id. at 40.  On August 24, 2001, the disposition was administratively reversed.  Id. at 52-53; see also Compl at ¶ 51.  On or about September 6, 2001, Messa was transferred to Great Meadow Correctional Facility ("Great Meadow").  See Paolano Aff. (Docket No. 70) at ¶ 5; see also Compl. at ¶ 52.  While at Great Meadow, Messa filed various grievances regarding his alleged inadequate medical treatment by defendants.  See Compl. at ¶¶ 54, 57, 60, 67.

This action followed.

---

[3] SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (2006). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

**II. Discussion**

Messa asserts three causes of action in his complaint.  The first alleges that defendants used excessive force and failed to intervene in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  Compl. at ¶ 72.  The second alleges that Blaetz found Messa guilty of disciplinary charges without any supporting evidence in violation of the Fourteenth Amendment.  Id. at ¶ 74.[4]  The third alleges that defendants were deliberately indifferent to Messa's serious medical needs in violation of the Eighth Amendment.  Id. at ¶ 76-77.  Defendants seek summary judgment on all claims.

**A. Standard**

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine

---

[4] Messa's second cause of action was previously dismissed as to claims that defendants filed false misbehavior reports.  See Docket Nos. 50 at 9; 55.

4

issue for trial. The non-moving party must do more than merely show that there is some

doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact

could find in favor of the non-moving party for a court to grant a motion for summary

judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994);

Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).  When, as here, a party seeks

summary judgment against a pro se litigant, a court must afford the non-movant special

solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).

However, the mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.


## B. Exhaustion

Defendants contend that Messa has failed to demonstrate any reasonable excuse

for failing to exhaust his administrative remedies as to his Eighth Amendment excessive

force claim.  See Defs. Mem. of Law (Docket No. 70) at 2-4.  Messa contends that he failed

to exhaust his administrative remedies after the March 25, 2001 incident because he was

threatened by an unidentified prison official.  See Pl. Reply Mem. of Law (Docket No. 76) at

7-9.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), subjects suits

concerning prison conditions brought under federal law to certain prerequisites.

Specifically, the PLRA dictates that a prisoner confined to any jail, prison, or correctional

facility must exhaust all available administrative remedies prior to bringing any suit

concerning prison life, "'whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002)); see also Jones v. Bock, 127 S. Ct. 910, 918-19 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.") (citation omitted); Woodford v. Ngo, 126 S. Ct. 2378, 2382-83 (2006).  Administrative remedies include all appellate remedies provided within the system, not just those that meet federal standards.  Woodford, 126 S. Ct. at 2382-83.  However, the Second Circuit has recognized three exceptions to the PLRA's exhaustion requirement:

> when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004); see also Boddie v. Bradley, No. Civ. 99-1016 (TJM), 2006 WL 162996, at *2 (N.D.N.Y. Jan 20, 2006).

"The PLRA's exhaustion requirement is designed to 'afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004) (quoting Porter, 534 U.S. at 524-25). "'[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" Id. (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)). Inmates must provide sufficient information to "allow prison officials to take appropriate responsive measures."  Id.

6

DOCS has established a grievance procedure which includes a three-stage review and appeal process. See N.Y. Correct. Law § 139 (McKinney 2003); N.Y. Comp. Codes R. & Regs. tit. 7, § 701.1-.16 (2003); Hemphill, 380 F.3d at 682-83.  When an inmate files a grievance, it is investigated and reviewed by an Inmate Grievance Resolution Committee ("IGRC").  If the grievance cannot be resolved informally, a hearing is held.  The IGRC decision may be appealed to the Superintendent of the facility.  Finally, an inmate may appeal the Superintendent's decision to the Central Office Review Committee ("CORC"). N.Y. Comp. Codes R. & Regs. tit.7, § 701.7(a) (2003).

During Messa's October 22, 2005 deposition, he testified that although he understood the three-step grievance process provided by DOCS (see Messa Dep. (Holohan Aff., Ex. C) at 22),[5] he failed to file a grievance after the incident because he "was not thinking very clearly . . . because of [his] injuries."  Messa Dep. at 22.  However, in his reply to defendants' summary judgment motion, Messa contends that he failed to file a grievance because he feared for his life after an unidentified prison employee threatened to kill him while he was in the infirmary.  See Pl. Reply Mem. of Law at 8-9; see also Messa Dep. at 63-65, 73.  Defendants contend that because the threat came from an unidentified prison employee, and not one of the named defendants, they should not be estopped from asserting the affirmative defense of non-exhaustion.[6]  In support, defendants interpret the

---

[5] Messa gives conflicting testimony about his understanding of the grievance process before March 25, 2001.  Compare Messa Dep. at 20-21, with id. at 22-24. However, it is clear that Messa had filed a grievance prior to March 25, 2001.  See id. at 24; see also Holohan Aff. (Docket No. 70), Ex. D.

[6] Defendants also argue that "a plaintiff may not change his or her deposition testimony in an effort to avoid summary judgment."  Defs. Reply Mem. of Law (Docket No. 80) at 2-3 (citing Bracci v. New York Dep't of Corr. Servs., No. Civ. 01-1300 (TJM), 2005

Second Circuit's holding in <u>Hemphill</u> to require a plaintiff to demonstrate that conduct by

named defendants rendered the administrative remedies unavailable.  <u>See</u> Defs. Reply

Mem. of Law at 2-3.  However, the facts of <u>Hemphill</u> are distinguishable from the instant

case because unlike here where Messa contends that an unidentified prison employee

threatened him, the plaintiff in <u>Hemphill</u> alleged that it was only named defendants who

were responsible for the threats.  <u>See</u> <u>Hemphill</u>, 380 F.3d at 688-91.  Thus, the Second

Circuit never reached the issue of whether a plaintiff must demonstrate that a named

defendant rendered the administrative remedies unavailable and thus estopped the

defendants from presenting the affirmative defense of non-exhaustion.  However, a district

court in the Second Circuit has addressed this issue.

       In <u>Brown v. Koenigsmann</u>, the district court relied on the Second Circuit's decision in

<u>Ziemba</u> in holding that "[n]othing . . . requires that the action or inaction which is the basis

for the estoppel [of the affirmative defense of non-exhaustion] be that of the particular

defendant in the prisoner's case."  No. Civ. 01-10013 (LMM), 2005 WL 1925649, at *2

(S.D.N.Y. Aug. 10, 2005); <u>see also</u> <u>Ziemba</u>, 366 F.3d at 163-64.  Instead, the court held

that "<u>Ziemba</u> does not require a showing that [a named defendant] is personally responsible

for plaintiff's failure to complete exhaustion, as long as someone employed by DOCS is." <u>Id.</u>

Here, Messa contends that the threats came from a warden and an individual in the

infirmary that was wearing a blue uniform.  <u>See</u> Messa Dep. at 64-65.  It is reasonable to

_____

WL 2437029, at *1 n.1 (N.D.N.Y. Sept. 30, 2005).  However, a fair reading of Messa's
testimony could be reasonably construed to demonstrate that he was simply confused at
times during the deposition instead of affirmatively attempting to change his testimony.
Thus, viewing the evidence in the light most favorable to Messa as the non-moving party,
and in light of his pro se status, a triable issue of fact remains as to whether Messa failed
to file a grievance because of the threat.

conclude that these individuals were employed by DOCS.  Thus, their actions as alleged by

Messa estop the named defendants in this action from asserting the affirmative defense of

non-exhaustion.  Thus, viewing the evidence in the light most favorable to Messa as the

non-moving party, and taking into account his pro se status, triable issues of fact remain

regarding whether the threats against Messa estop defendants from asserting the

affirmative defense of non-exhaustion.

Therefore, it is recommended that defendants' motion on this ground be denied.


## C. Due Process

Messa contends that Blaetz found him guilty at the April 9, 2001 disciplinary hearing

without any evidence to support the charges.  Compl. at ¶ 74.

At a prison disciplinary proceeding, an inmate is entitled to (1) advance written notice

of the charges, (2) an opportunity to call witnesses if it conforms with prison security, (3) a

statement of evidence and reasons for the disposition, and (4) a fair and impartial hearing

officer.  Kalwasinski v. Morse, 201 F.3d 103, 108 (2d Cir. 1999) (citing Wolff v. McDonnell,

418 U.S. 539, 563-64 (1974)).  Additionally, the finding of guilt must be supported by some

evidence in the record to comport with due process.  See Massachusetts Corr. Inst. v. Hill,

472 U.S. 445, 455 (1985); see also Luna v. Pico, 356 F.3d 481, 487-89 (2d Cir. 2004).

Here, Blaetz relied upon the misbehavior reports of defendants Kelly, Martuscello,

Mrzyglod, and Tillotson in finding Messa guilty of the charges brought against him in the

March 25, 2001 misbehavior reports.  See Holohan Aff., Ex. E at 43.  Each of these

defendants relied on their personal knowledge when drafting their misbehavior reports.  See

id. at 1-10.  Messa contends that Blaetz could not simply rely on the misbehavior reports to

9

support his finding of guilt, arguing that the reports "must be supported by some type of substantial evidence." Pl. Reply Mem. of Law at 11. However, a misbehavior report alone suffices to support a hearing officer's finding of guilt. See Chapple v. Keane, 903 F. Supp. 583, 585 (S.D.N.Y. 1995); see also Simon v. Selsky, No. Civ. 99-5747 (LAP/JCF), 2002 WL 1205737, at *4 (S.D.N.Y. Mar. 12, 2002) ("the misbehavior report by itself is sufficient to establish [plaintiff's] guilt"). Thus, Messa has failed to raise an issue of material fact regarding his Fourteenth Amendment claim.

Therefore, it is recommended that defendants' motion on this ground be granted.[7]

### D. Eight Amendment

In his third cause of action, Messa contends that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. See Compl.

---

[7] Liberally construed, Messa's submissions assert a claim for failure to provide an adequate translator during his April 9, 2001 disciplinary hearing in violation of the Fourteenth Amendment's Due Process clause. See Pl. Reply Mem. of Law at 11; see also Triestman, 470 F.3d at 474-75 ("It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest") (internal quotations and citations omitted)). "Unless Spanish speaking inmates understand and can communicate with the [parole] hearing board, they are being denied the due process protections guaranteed in Wolff." Powell v. Ward, 487 F. Supp. 917, 932 (S.D.N.Y. 1980); see also Clarkson v. Coughlin, 898 F. Supp. 1019, 1040 (S.D.N.Y. 1995) (holding that "sufficient [due] process must include the presence of a qualified interpreter" to assist an inmate during the disciplinary process). In his reply, Messa incorporates by reference a July 3, 2001 letter from Sylvia Santana of Prisoners' Legal Services contending that the inability of Messa's Spanish translator to translate properly denied him a fair disciplinary hearing. See Holohan Aff., Ex. E at 49-50. This may constitute a colorable claim under the authorities cited above, but that claim has not been clearly raised nor have defendants had a fair opportunity to address it. Therefore, it is recommended that Messa be granted thirty (30) days from the date of the district court's decision on this motion to file an amended complaint alleging the failure to provide him with an adequate translator in violation of the Fourteenth Amendment.

at ¶¶ 76-77.

A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66. The test is twofold. First, the prisoner must show that there was a sufficiently serious medical need. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

A serious medical need is "'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)). An impairment that a reasonable doctor or patient would find important and worthy to treat, a medical condition that affects the daily activities of an individual, or the existence of chronic and substantial pain are all factors that are relevant in the consideration of whether a medical condition was serious. Chance, 143 F.3d at 702-03.

Deliberate indifference requires the prisoner to prove that the prison official knew of and disregarded the prisoner's serious medical needs. Id. at 702. Mere disagreement over proper treatment does not create a constitutional claim as long as the treatment was

11

adequate. Id. at 703.  Allegations of negligence or malpractice do not constitute deliberate

indifference unless the malpractice involved culpable recklessness.  Hathaway v. Coughlin,

99 F.3d 550, 553 (2d Cir. 1996).  Here, it is unclear whether Messa's conditions constituted

a serious medical need.  However, even if Messa's conditions were considered serious, his

Eighth Amendment claim fails to demonstrate that defendants were deliberately indifferent.


### 1. Dr. Bendheim

Messa contends that after the March 25, 2001 incident,  Dr. Bendheim "repeatedly

refused to provide proper and adequate medical treatment."  Compl. at ¶ 49.  Shortly after

the incident, Dr. Bendheim examined Messa and noted that he had a contusion above his

right eyebrow, dried blood on his lips, and refused to walk or put weight on his right ankle.

See Bendheim Decl. (Docket No. 70) at ¶ 4 & Ex. A.  Dr. Bendheim also noted that Messa

had previously suffered a right ankle fracture.  See id. at ¶ 5 & Ex. A.  As a result of these

findings, Dr. Bendheim had Messa's right ankle placed in a splint, admitted him to the

infirmary, ordered x-rays, and collected a urine sample.  See id. at ¶¶ 6-7, 9 & Ex. A.

Messa's x-rays and urinalysis were negative, but he was still prescribed pain medication.

See id. at ¶¶ 8-10 & Ex. A.  Messa was discharged from the infirmary on April 2, 2001 in

stable condition.  See id. at ¶ 11 & Ex. A.  Although Messa continued to complain of lower

back pain during his time at Green Haven, all physical examinations were unremarkable for

any significant injury.  See id. at ¶¶ 12-14 & Exs. A-B.  Nevertheless, Messa was prescribed

pain medication and physical therapy for his back.  See id. at ¶ 14 & Exs. A-B.  Thus, it is

clear that Messa received more than adequate care for his injuries while at Green Haven

and has failed to raise an issue of material fact as to Dr. Bendheim's alleged deliberate

indifference.

Therefore, it is recommended that defendants' motion on this ground be granted as to Dr. Bendheim.

### 2. Great Meadow

Messa contends that after arriving at Great Meadow, he was denied "adequate and proper medical treatment" by defendants Paolano, Silverburg, and Nesmith.  Compl. at ¶ 76.  Messa also contends that defendants have failed to properly treat his "mild degeneration disc disease" that he allegedly suffered due to the incident.  See Pl. Reply Mem. of Law at 13.

Regarding Messa's general complaint of inadequate medical care while at Great Meadow, he has failed to demonstrate that defendants were deliberately indifferent.  After his transfer to Great Meadow, Messa was examined by the medical staff and only complained of back pain.  See Paolano Aff. at ¶¶ 7-8.  Over the next two years, Messa complained intermittently of back pain, but x-rays and other diagnostic tests ordered by the medical staff failed to demonstrate any significant problems.  See id. at ¶ 33 & Ex. A at 19-25, 27; see also Paolano Aff., Ex. E.  Moreover, Messa was provided with pain medication for his alleged lower back pain.  See Paolano Aff. at ¶¶ 12, 29-30; see also Pl. Reply Mem. of Law at 13 ("the only treatment that plaintiff has received is medication to try and stimulate the pain, but is not the medication requested by the outside specialist").[8]

---

[8] To the extent that Messa contends he should have been provided the pain medication recommended by the outside specialist, this claim must fail because mere disagreement over proper treatment does not create a constitutional claim as long as the treatment was adequate.  See Chance, 143 F.3d at 702.  Here, Messa has failed to

On October 31, 2002, after complaining of right ankle pain, Messa was examined by an orthopedic specialist who recommended that he begin physical therapy and that he be given a lace-up ankle brace and an MRI.  See Paolano Aff., Exs. C-D.  The results of the MRI were unremarkable.  See id. at Ex. D.  On January 14, 2003, Messa also complained of testicular pain and on April 8, 2003, Dr. Silverburg ordered a urology examination.  See id., Ex. A at 30 & F.  The urologist recommended an ultrasound, which was negative.  See id., Ex. G.  Thus, Messa has failed to raise a material issue of fact regarding defendants' treatment of his alleged lower back and right ankle pain.

As to Messa's contention that an August 11, 2005 MRI demonstrated that he suffered from a mild degenerative disc condition, this condition arose more than eighteen months after he was transferred out of the custody of Great Meadow.  See Pl. Reply Mem. of Law at 13.[9]  Moreover, Messa has failed to produce the medical records from this purported August 11, 2005 MRI to support his contention.  Further, a June 7, 2004 MRI failed to demonstrate any disc herniation.  See Paolano Aff., Ex. I.  Thus, in light of defendants' documentary evidence to the contrary, Messa's conclusory allegations that defendants denied him proper medical treatment fail to raise a genuine issue of material fact as to the deliberate indifference of defendants Paolano, Silverburg, or Nesmith.  See Cifarelli v. Village of Babylon, 93 F.3d 47, 51 (2d Cir. 1996) ("mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment").

Therefore, it is recommended that defendants' motion be granted as to Messa's third

---

demonstrate that the pain medication provided by defendants was inadequate.

[9] Messa was transferred to Clinton Correctional Facility in December 2003.  See Paolano Aff. at ¶ 34.

cause of action as to defendants Paolano, Silverburg, and Nesmith.[10]

### E. Qualified Immunity

Messa also alleges in his third cause of action that defendants LeClaire, Wright, VanBuren, Stern, and Paolano failed to investigate Messa's complaints and failed to insure that he received adequate medical care.  Compl. at ¶ 77.  These defendants contend that they are entitled to qualified immunity on this claim.  Defs. Mem. of Law at 17-18.  Qualified immunity generally protects governmental officials from civil liability insofar as their conduct does not violate clearly established constitutional law of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229 (N.D.N.Y. 2002), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  A court must first determine that if plaintiff's allegations are accepted as true, there would be a constitutional violation. Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.

Here, as discussed supra, accepting all of Messa's allegations as true, he has not shown that any defendant violated his constitutional rights.  Therefore, because Messa's medical treatment was constitutionally adequate, there was no basis for investigation of his complaints and Messa has failed to raise a question of fact whether defendants LeClaire,

---

[10] Defendants Paolano, Nesmith, and Silverburg also contend that Messa cannot demonstrate that they were personally involved in the alleged deliberate indifference.  See Defs. Mem. of Law at 15-16.  However, it is recommended herein that Messa's deliberate indifference claim be dismissed on other grounds.  Thus, there is no need to address the argument.

Wright, VanBuren, Stern, or Paolano violated his Eighth Amendment rights.  Accordingly, defendants' motion for summary judgment on this ground should be granted as to these defendants.

### III.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that:

1. Defendants' motion for summary judgment (Docket No. 70) be **GRANTED** as to Messa's second and third causes of action and this action be **TERMINATED** as to defendants Bendheim, Paolano, Silverburg, Nesmith, LeClaire, Wright, VanBuren, and Stern;[11]

2. **DENIED** as to Messa's first cause of action for excessive force; and

3. Messa be granted **THIRTY (30) DAYS** from the date of the district court's decision on this motion to file an amended complaint to allege the failure to provide him with an adequate translator in violation of the Fourteenth Amendment.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

---

[11]See also note 2 supra.

16

**REVIEW**.  <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


DATED: February 26, 2007
       Albany, New York_____

United States Magistrate Judge